IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-00510-WDM-BNB

WEDBUSH MORGAN SECURITIES, INC., a California corporation, and LAWRENCE C. HARTMAN, an individual,

    Plaintiffs,

v.

KIRKPATRICK PETTIS CAPITAL MANAGEMENT, INC., a Nebraska corporation,

    Defendant.

---

## AMENDED ORDER ON MOTIONS TO DISMISS

Miller, J.

This matter is before me on the Motion to Dismiss filed by Defendant Kirkpatrick Pettis Capital Management, Inc. ("KPCM") (doc no 37), KPCM's Motion to Dismiss for Failure to File a certificate of Review (doc no 46), Plaintiffs' Motion for Extension of Time to File Certificate of Review (doc no 51), and Plaintiff's Amended Motion for Ruling on Question of Law (Regarding Certificate of Review) (doc no 62). After a review of the complaint and the parties' written arguments, I conclude oral argument is not required. For the reasons that follow, the Motion to Dismiss (doc no 37) is granted in part. In addition, I conclude that Plaintiffs were not required to file a certificate of review in this case.

### Background

Subject matter jurisdiction is premised on diversity of citizenship. 28 U.S.C. § 1332.

According to the First Amended Complaint ("Complaint"), Plaintiff Lawrence C. Hartman ("Hartman") is bond trader and bond salesman whose clients included the

government of Douglas County, Colorado (the "County"). Complaint at ¶¶ 2, 22. Starting 2002, Hartman began conducting his trades through Defendant Wedbush Morgan Securities, Inc. ("Wedbush"), a financial services and investment firm. Complaint at ¶¶ 1, 12, 15. KPCM and an affiliated broker/dealer were competitors of Hartman and Wedbush. Complaint at ¶ 16.

In 2002, the long-term Treasurer of the County retired and a new Treasurer, Sharon K. Jones, was appointed and then elected. Complaint at ¶¶ 25, 27. However, after the County received a complaint concerning Hartman and Wedbush, Jones suspended Hartman and Wedbush pending completion of an investigation. Complaint at ¶¶ 36-40. Thereafter, the County retained KPCM as its investment advisor. Complaint at ¶ 45. The County requested that KPCM investigate the securities transactions Hartman had recommended. Complaint at ¶ 47. KPCM issued a report titled "Douglas County, Colorado Investment Portfolio Audit" (the "Report") in late 2004. Complaint at ¶ 55. Plaintiffs contend that KPMC used the investigation as an opportunity to wrongfully disparage and defame Wedbush and Hartman in order to prevent them from returning to the County's list of approved brokers. Complaint at ¶¶ 53-54.

Plaintiffs allege that the Report contained false and defamatory statements of fact which implied that Plaintiffs had committed various violations of securities laws. Plaintiffs further allege that they were subject to regulatory and criminal investigations and lost business as a result of the publication of the Report. Plaintiffs filed this lawsuit asserting the following claims for relief: (1) Disparagement; (2) Defamation/Libel; (3) Tortious Interference with Prospective Business or Economic Advantage; and (4) Violation of

Colorado Consumer Protection Act.

## Standard of Review

A motion to dismiss is appropriate when it appears beyond doubt that the plaintiff could prove no set of facts entitling it to relief.  The court must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiff.  *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996).

## Discussion

In its Motion to Dismiss, KPCM argues that the complaint must be dismissed because the statements upon which Plaintiffs base their claims are not actionable. Specifically, KPCM contends that the statements are not factually false, are protected opinions or are otherwise privileged, or are based on fully disclosed facts.  KPCM also argues that Plaintiffs' other tort and statutory claims are deficient.  Further, in its Motion to Dismiss for Failure to File a Certificate of Review, KPCM contends that Plaintiffs' failure to file a certificate of review pursuant to C.R.S. § 13-20-602 mandates dismissal.  Plaintiffs oppose the motions.

1. Defamation and Defenses

A claim of defamation or disparagement requires as a prerequisite a defamatory or derogatory false statement of fact. *Williams v. District Court,* 866 P.2d 908, 911 n. 4 (Colo. 1993); *Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 507 n. 14 (Colo. 2004)*.*  However, these common law claims are subject to the legal principles developed in First Amendment jurisprudence protecting free expression of opinions on matters of public concern.

Whether a statement constitutes a protected opinion or an actionable statement of

fact is a question of law that I may determine on a motion to dismiss.  *Rinsley v. Brandt*, 700 F.2d 1304, 1309 (10th Cir.1983); *TMJ Implants, Inc. v. Aetna, Inc.*, 405 F. Supp. 2d 1242, 1249 (D. Colo. 2005).  The controlling authority on the fair comment privilege is *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), which the Colorado Supreme Court addressed in *Keohane v. Stewart*, 882 P.2d 1293, 1298 (Colo.1994), *cert. denied*, 513 U.S. 1127 (1995).

A "statement of opinion relating to matters of public concern which does not contain a provably false factual connection will receive full constitutional protection."  *Milkovich*, 497 U.S. at 20.  The parties do not appear to dispute that an evaluation of the investment services provided to a county government is a matter of public concern.  Accordingly, the fair comment principles embodied in *Milkovich* and *Keohane* are appropriate here.

Colorado has adopted the fair comment principle embodied in Section 566 of the Restatement.  "A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion."  Restatement (Second) of Torts § 566 (1977); *Keohane*, 882 P.2d at 1298.  In its analysis, a reviewing court discerns whether a statement implies undisclosed defamatory facts using a bipartite test.  The first inquiry is whether the statement is sufficiently factual to be susceptible of being proved true or false.  *Keohane*, 882 P.2d at 1299.  The second inquiry is whether reasonable people would conclude that the assertion is one of fact, using three factors: 1) how the assertion is phrased; 2) the context of the entire statement; and 3) the circumstances surrounding the assertion, including the medium through which the information is

disseminated and the audience to whom the statement is directed. *Keohane*, 882 P.2d at 1299. One distinction employed in previous case law is that of "evaluative" as opposed to "deductive" opinion. Evaluative opinions are those that are not provably false and are protected; in contrast, deductive opinions are those that state or imply assertions that may be proven false. *Jefferson County Sch. Distr. No. R-1 v. Moody's Investor's Serv., Inc.*, 175 F.3d 848, 853 (10th Cir. 1999).

"[A]llegations of illicit behavior, even if expressed as an opinion, may support a defamation action if there is no adequate exposition of the underlying facts that support the allegedly defamatory statement." *Keohane*, 882 P.2d at 1304 (citing *Burns v. McGraw-Hill Broad. Co., Inc.*, 659 P.2d 1351, 1359 (Colo. 1983)). However, in general, if the factual premise underlying an opinion is fully disclosed, the statement will be protected. *Jefferson County*, 175 F.3d at 853; *Bucher v. Roberts*, 595 P.2d 239, 241 (Colo. 1979) ("A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is") (quoting comment c to the Restatement (Second) of Torts § 566 (1976)); *see also Burns* 659 P.2d at 1360 ("If a listener cannot evaluate the alleged defamatory language because no basis for the statement has been disclosed, a defamation action may properly be brought.") In addition, a statement that is too indefinite to be proven true or false may not be actionable. *Jefferson County*, 175 F.3d at 853. Finally, in a case involving a public figure, if several statements are true, or substantially true, and there are no undisclosed material facts, no action can be brought based on an allegedly defamatory implication drawn from that information. *Pietrafeso v. D.P.I., Inc.,* 757

P.2d 1113, 1116 (Colo. App. 1988).

Analyzing the various categories of statements that Plaintiffs allege are false and defamatory, I note at the outset that the entirety of the Report is directed at the County and is based on a review of documents in the County's possession. Accordingly, relevant to my analysis is the understanding that the County was capable of verifying and evaluating virtually every statement of fact or opinion contained in the Report.

    a)    Statements Concerning the Accuracy or Objectivity of the Report

Plaintiffs contend that labeling the Report an "audit" was false because using this term created a "false impression that the KPCM Report was independent, competent, thorough, objective, honest and complete." Complaint at ¶ 57. Moreover, in the introduction, KPMC asserts that the goal was to write "a technically accurate report to address in a serious fashion the evaluation of investment activity in the County's portfolio during the study period." Plaintiffs argue that this statement is false because the report is not "technically accurate." Complaint at ¶ 58. I conclude that these statements are not actionable.

The word "audit" is defined as "[a] formal examination of an individual's or organization's accounting records, financial situation, or compliance with some other set of standards." *Black's Law Dictionary* (8th ed. 2004). The Report fits this definition. Moreover, I disagree that a reasonable reader would conclude that the term "audit" contains "factual" implications with respect to such attributes as objectivity. These are characteristics evaluated in degrees based on numerous factors that are not subject to empirical verification. Similarly, characterizing the report as "technically accurate" is a

matter of opinion and is based upon the information contained in the Report. As discussed below, I conclude that the alleged defamatory statements underlying the claims are true or otherwise not actionable; therefore, I see no falsity in describing the Report as "technically accurate."

      b)      Statements Regarding Portfolio Turnover

Plaintiffs contend that KPCM wrongly accused them of excessively trading the bond portfolio. Specifically, they object to the following statement: "Portfolio turnover in securities for 2003 was 345%" Complaint at ¶ 62. They allege that this is false because if a different calculation method is used, the turnover rate would be 105%. Complaint at ¶¶ 63-64. This is not a false statement of fact. The Report identifies how KPCM arrived at the 345% turnover rate and Plaintiffs do not contend that the computation was incorrect, just that a different methodology should have been used. The same applies to other calculations that Plaintiffs contend had the effect of making the turnover calculation appear high. Complaint at ¶ 65.

Based on this computation, KPCM made several evaluative opinions, specifically that the turnover rate was "excessive" and that it was not aware of any other Colorado public entity with a similar turnover rate. Complaint at ¶¶ 66-68. Moreover, the Report contained the following conclusions: "There was no discernable improvement in yield or improved total return" and "The ultimate effect of the high turnover activity was to increase the County's transaction costs and reduce the portfolio's total return." Complaint at ¶¶ 69-70. Because these are evaluative opinions, which contain subjective judgments as to the degree of turnover that is appropriate, and are based on disclosed information, I conclude

7

that these statements are not actionable. *See NBC's Subsidiary (KCNC-TV) v. The Living Will Center*, 879 P.2d 6 (Colo. 1994) (in context, statements characterizing Plaintiff's product as "a scam" reflected speaker's subjective evaluation of product's value and did not contain or imply a verifiable fact).

Similarly, the Report characterized these transactions as having "relatively poor pricing" and noted that the County did not have access to an outside registered investment advisor or a Bloomberg terminal to "level the playing field." Complaint at ¶¶ 73-74. The Report also contained the conclusion that the County's lack of third party pricing assessment "contributed to its portfolio underperformance (risk-adjusted) during the study period and its poor transactional pricing." Complaint at ¶ 76. Again, KPCM's judgment regarding pricing is an opinion based on disclosed facts and computations. KPCM's opinion about the reason for the pricing–i.e., lack of access to third party information--is also disclosed and can therefore be evaluated by the reader, in this case the County. Since there is no implication of undisclosed false defamatory facts, these statements are not actionable.[1] The same applies to conclusions drawn by KPCM regarding pricing on other trades, in which KPCM calculates the markup on the transactions based on "IDC Pricing Service." Complaint ¶¶ 115-119. Again, a disagreement over how calculations should have been performed does not demonstrate that the data was "false."

I also find no implication of undisclosed defamatory facts in KPCM's statement that

---

[1] Plaintiff argues that in fact the County did have access to outside advisors and could have easily obtained access to Bloomberg. Even if the statements concerning the County's ability to obtain outside pricing information were false, they pertain to the County and not to Plaintiffs and are not defamatory on their face.

a transaction involved a certain markup "in addition to any selling group commission." Complaint ¶ 122. Plaintiffs contend this is false because they never received any selling group commission. The phrasing of the sentence, including the term "any," does not suggest that Plaintiffs actually received a selling commission, but that if they did it would be additional to the markup. Accordingly, as an obvious conjecture, this is not actionable.

        c)        Statements Regarding Maturity, Yield, and Prepayment Speed

Plaintiffs also object to a number of statements contained in the Report in which KPCM states that its examination of the County's investment records reveals "no indication of which CPR speed was used" to establish pricing, yield, or maturity on various bond transactions. Complaint at ¶¶ 79, 82, 91. KPCM then uses historical prepayment speeds to calculate pricing on the bonds and to compare that pricing to various comparators in the market. Complaint at ¶¶ 83, 86, 87, 89. Plaintiffs allege that these conclusions are false and misleading because the assessments should have been based on projected prepayment speeds and that Plaintiffs always provided accurate information to the County about maturity and yield on every transaction. Complaint at ¶¶ 82, 83, 86. Again, to the extent that KPCM disclosed the basis of its calculations and rendered conclusions based on that information, no cause of action for defamation will lie.

A more difficult analysis is presented with the statements by KPCM about what information was contained in the County's records. Plaintiffs do not affirmatively allege that the documents in the County's possession in fact do contain information about what prepayment speed was used for their calculations. KPCM argues that Plaintiffs have artfully worded their Complaint to avoid making such a representation and instead have

alleged only that the relevant information was provided to the County in some other form. Motion to Dismiss at 18. In their response brief, Plaintiffs do not respond to this argument directly, but rather simply repeat their ambiguous allegation from the Complaint that they "always provided Douglas County with complete and accurate information." Response to Motion to Dismiss at 11. However, on a motion to dismiss, I must construe the allegations in the light most favorable to the Plaintiffs. Accordingly, I conclude that these statements, if false and defamatory, could support a claim.

Plaintiffs also contend that one of the final conclusions concerning Plaintiffs' provision of information to the County is defamatory. In the Report, KPCM notes that certain documents containing pricing information did not include certain data; KPCM concludes, "It would appear that the removal of this information was deliberate." Complaint ¶ 124. Plaintiffs do not allege that the documents in fact contained this information, but object to the conclusion that the omission was intentional. Again, however, since the basis of KPCM's opinion is disclosed, I hold that it is privileged.

        d)        Statements Regarding Swap Trades

Another section of the Report examined several bond swaps. The Report recites that KPCM did not find any "plausible justifications" or "discernable purpose" for the trades, which Plaintiffs contend is false because there was a legitimate reason for the trades. Complaint ¶ 95. Similarly, in the Report, KPCM identifies and dismisses Plaintiff's rationale for the trades. Complaint ¶ 109. These are matters of opinion that involve numerous factors, not all subject to empirical verification but rather derive also from value judgments and subjective concerns, and therefore are fair comment.

However, Plaintiffs also contend that the Report does not accurately describe several of the transactions, misidentifying certain of the bonds actually exchanged. Complaint ¶¶ 97-100, 106. The Report then makes several evaluations about the relative value of the bonds bought and sold in the exchange. Complaint ¶¶ 104, 108. If the Report falsely described the underlying transactions, defamatory or disparaging opinions based on the false information would not be protected by the fair comment privilege. *Teilhaber Mfg. Co. v. Unarco Materials Storage,* 791 P.2d 1164 (Colo. App. 1989) (where pivotal facts underlying opinion regarding performance of competitor's product were false and undisclosed, the opinions were not protected). Accordingly, these statements could support a claim for defamation or disparagement.

e)   Evaluation Dates and Comparisons to Merrill Lynch Index

Plaintiffs also allege that the Report contained misleading information because KPCM chose to evaluate the performance of the County's portfolio from January 1, 2002 to June 30, 2004. Complaint ¶ 126. Plaintiffs allege that if the evaluation had been extended to September 2004 or cut off in February 2004, it would have shown overall better performance. Complaint ¶¶ 133-34. No false statement of fact is implicated by KPCM's determination of the time period it chose to evaluate, which is disclosed. Similarly, Plaintiffs cannot state a claim for defamation or disparagement based on KPCM's decision to compare the performance of the County's bond portfolio to the Merrill Lynch Index. Complaint ¶ 137. Simply because another comparator would have made a better impression overall does not mean that the comparison contained a false statement of fact. *See, e.g., TMJ Implants*, 405 F. Supp. 2d at 1253 (failure to disclose the full universe of

11

relevant information does not mean opinion loses protection).

        f)        Statements Concerning Diversification and Suitability

Several sections of the Report concerned the relative diversification of the County's bond portfolio. In particular, the Report noted that the County had significant investments in Federal Home Loan Mortgage Corporation and Federal National Mortgage Association securities. Complaint ¶ 143. The Report compared the County's holdings in these agencies to the percentage invested by Routt County, Colorado, and opined that the County was "overweighted" in FHLMC and FNMA issues. Id. Plaintiffs do not contend that the percentages identified in these holdings were false, but take issue with the selection of Routt County as a comparator as well as the characterization of the County's holdings as "overweighted." Complaint ¶¶ 147-49. Plaintiffs further object to KPCM's disclosure in the Report of an accounting scandal involving FHLMC. Complaint ¶ 155. Plaintiffs also take issue with a statement that investments of this kind "offer little diversification from prepayment risk and negative convexity." Complaint ¶ 150. However, none of these allegations identify an actual false statement of fact or implied undisclosed untrue fact; they merely reflect a difference of opinion as to how much the County should hold and why. Such judgments are not true or false, but again are evaluations based on numerous subjective factors and are therefore not actionable.

The Report also asserts that, with respect to these types of investments, "the County was substantially out of compliance with its diversification guidelines." Complaint ¶ 154. Plaintiffs allege that they had drafted a new investment guideline for the County, and apparently the portfolio would have been in compliance with the draft guideline, but

do not dispute that the concentration of investment in mortgage backed securities violated the controlling guidelines, as Plaintiffs' draft guidelines were presented but not adopted. Complaint ¶¶ 162-165. Again, in context, I cannot conclude that the County, which was the audience for the Report, would reasonably have concluded that the opinions regarding compliance with the investment policies were based on undisclosed defamatory false statements of fact; rather, the Report identifies the two investment policies, explains which is controlling, and then states the conclusion regarding compliance with the guidelines.

Plaintiffs argue that several other statements concerning suitability of various investments are defamatory. One is a statement that "in a portfolio the size of the County's such odd lot blocks are not suitable." Complaint ¶ 173. This is clearly a matter of opinion based on factors that cannot be adjudged true or false. Similarly, Plaintiffs take issue with a description of an Indexed Amortized Note ("IAN") that the Report identifies as a "Interest Amortizing Note." Complaint ¶ 174. The Report goes on to say that Plaintiffs "systematically misidentified" this security "as a 'collateralized mortgage obligation.'" Id. However, Plaintiffs do not allege that the security was not really misidentified, but only take issue with the characterization that it was done so "systematically." Again, since this is an opinion based on disclosed true facts, the statement is privileged.

The Report goes on to say that "It is uncertain whether an IAN conforms to the provisions of Colorado state statutes restricting the types of derivatives that may be purchased by a County" and noting that if a security does not conform, Colorado law provides a remedy against a broker/dealer who sells the security. Complaint ¶¶ 176-77. I conclude these statements are not actionable. They do not contain a false statement of

fact or imply an undisclosed false factual basis. They merely address a hypothetical circumstance without opining as to whether the security at issue is or is not conforming. A reasonable reader would not conclude that these statements falsely assert that the IAN violated Colorado law. *See Keohane*, 882 P.2d at 1302 (letter filled with speculative and conjectural language could not be construed as asserting statement of fact).

        g)        Statements Containing Legal Opinions

Plaintiffs allege that several statements concerning whether certain securities violate state law regarding maturity limits are defamatory. Complaint ¶¶ 178-183. Plaintiffs argue that KPCM used the trade date rather than the settlement date in opining as to whether certain securities violated the statute. Again, however, the factual basis of the opinion is disclosed and therefore is not actionable.

I have reviewed the remaining statements underlying Plaintiffs claims and conclude that they are not false or are too indefinite to be actionable.

To summarize, I conclude that nearly all of statements at issue are either not alleged to be false or are privileged opinions based on disclosed information. The only exceptions are the statements identified in Paragraphs 79, 82, 91, 96, 97, 98, 99, 100, 102, 104 106, 108 of the Complaint, which, if false and defamatory/disparaging and made with actual malice, could form the basis of a valid claim. Again, however, the issue is not the absolute truth or falsity of the factual representation, but whether the documents analyzed by KPCM did or did not contain the information at issue.

2.        Tortious Interference with Prospective Business Relations

KPCM argues that this claim fails because Plaintiffs have alleged no more than a

mere hope that their business would have continued with the County, particularly since Plaintiffs had no ongoing contract, were already under suspension, and had failed to respond to a Request for Proposals issued by the County seeking investment advisors. However, in light of the standard I must apply on a motion to dismiss, I conclude that Plaintiffs have adequately alleged that they lost prospective business as a result of the Report.

In addition, KPCM contends that the Complaint does not allege that KPCM used "wrongful means" to interfere in these relationships. The Complaint alleges facts demonstrating that the parties were competitors. In these circumstances, a defendant's alleged interference with a prospective contract between a plaintiff and third party is not improper if: (a) the relation concerns a matter involved in the competition between the actor and the other and (b) the actor does not employ wrongful means and (c) his action does not create or continue an unlawful restraint of trade and (d) his purpose is at least in part to advance his interest in competing with the other. *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 501 (Colo. 1995). Defamation with actual malice, however, would certainly qualify as "wrongful." *Id.* at 502 n. 6 (citing cases holding that acts that could give rise to liability, including defamation, constituted "wrongful means" under the competitor's privilege doctrine). Accordingly, if Plaintiffs can prove that the statements identified above were defamatory or disparaging, they could also state a claim for tortious interference with prospective business relations.

3.  Colorado Consumer Protection Act Claim ("CCPA")

KPCM argues that Plaintiffs' CCPA claim fails because the Report did not have a

15

public impact. I agree. An essential element of a CCPA claim is the existence of a deceptive trade practice that "significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.,* 62 P.3d 142, 146 (Colo. 2003). The relevant considerations in determining public impact are (1) the number of consumers directly affected by the challenged practice; (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice; and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future. *Id.* at 149.

Even construing the facts in the light most favorable to Plaintiffs, I conclude that they cannot demonstrate a significant public impact. The Report was directed at one consumer, the County. I disagree with Plaintiffs that all the residents of the County should be considered as the affected consumers. The County is an entity separate from the residents and it, not the individuals comprising the County's population, was the audience of the Report. The connection between the Report and any financial impact on the individual residents is entirely too tenuous and speculative to establish a broad public impact. The second factor, concerning the relative sophistication and bargaining power of the County is not revealed in the Complaint, but its absence is not determinative. Again, the Report was based entirely on documents in the County's possession and therefore the County was capable of obtaining other advice concerning KPCM's conclusions if it so desired. I also note that the County is not a party to this action and apparently was not unhappy with the opinions and recommendations contained in the Report. I conclude that

the third factor, any past or potential public impact, is also negligible. Plaintiffs have not alleged that KPCM has a history or practice of including false statements of fact in its reports to its customers. Further, in light of the small number of statements remaining at issue in this case, there is little to no potential public impact.

4. Certificate of Review

In a separate motion, KPCM also seeks to dismiss the entire case because Plaintiffs failed to file a certificate of review in accordance with C.R.S. § 13-20-602. I disagree.

The relevant statute provides: "In every action for damages or indemnity based upon the alleged professional negligence of . . . a licensed professional, the plaintiff's or complainant's attorney shall file with the court a certificate of review" within 60 days of service of the complaint. C.R.S. § 13-20-602(1). The certificate must contain an affirmation that the attorney "has consulted a person who has expertise in the area of the alleged negligent conduct; and . . . [that person] has concluded that the filing of the claim, counterclaim, or cross claim does not lack substantial justification [as defined by statute]." C.R.S. § 13-20-602(3). Citing *Martinez v. Badis,* 842 P.2d 245 (Colo. 1992), KPCM argues that any claim involving a licensed professional in which expert testimony is needed to establish a *prima facie* case requires a certificate of review. KPCM overstates the holding of *Martinez.* Rather, the Colorado Supreme Court held in that case that the certificate of review statute "applies to all claims against licensed professionals wherein expert testimony is required to establish <u>the scope of the professional's duty or the failure of the professional to reasonably conduct himself or herself</u> in compliance with the responsibilities inherent in the assumption of the duty." *Martinez*, 842 P.2d at 252

(emphasis added). Here, resolution of the legal issues do not require any examination of the duty owed by KPCM to the County as its investment advisor. Moreover, KPCM has not identified, and affirmatively disputes the existence of, any duty owed by KPCM to Plaintiffs. While expert testimony may be required to show whether certain statements are true or substantially true, KPCM's duty of care or failure to meet that duty is irrelevant.

This conclusion is based on the facts presented in this case. In other circumstances, proving a defamation claim could involve an examination of a professional's duty of care in demonstrating that the professional knowingly made a false statement of fact. *See, e.g., Williams v. Boyle,* 72 P.3d 392 (Colo. App. 2003) (plaintiff who claimed physician falsely diagnosed her as having a mental disorder and published that diagnosis to other medical providers was required to file certificate of review; proof of whether physician knowingly published false statement required expert testimony to establish whether diagnosis was unreasonable under the circumstances). Here, however, I conclude that whether KPCM acted with malice does not require an examination of the scope of the professional duties of an investment advisor or the reasonableness of its assessments.

Accordingly, it is ordered:

1. KPCM's Motion to Dismiss (doc no 37) is granted in part and denied in part. Plaintiff's defamation and disparagement claims as set forth in Paragraphs 79, 82, 91, 96, 97, 98, 99, 100, 102, 104, 106, 108 of the Complaint remain pending and all others are dismissed. Plaintiff's Colorado Consumer Protection Act claim is dismissed. Plaintiff's claim of intentional interference with prospective business

relations remains pending.

2. KPCM's Motion to Dismiss for Failure to File a certificate of Review (doc no 46) is denied.

3. Plaintiffs' Motion for Extension of Time to File Certificate of Review (doc no 51), and Plaintiff's Amended Motion for Ruling on Question of Law (Regarding Certificate of Review) (doc no 62) are denied as moot.

4. I note that KPCM has filed a motion for summary judgment (doc no 121). This motion is denied without prejudice. KPCM may file an amended motion taking into account this order on or before March 20, 2007.

DATED at Denver, Colorado, on April 9, 2007.

BY THE COURT:

s/ Walker D. Miller
United States District Judge